**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**DONALD K. BECKER, SR.**
3020 Crown Circle
Manchester, Maryland
              21102

        Plaintiff

  v.                                    **Civil Action** _____

**BALTIMORE COUNTY MARYLAND**
Towson, Maryland 21204

        Serve:
        Michael E. Field
        Baltimore County Attorney
        Towson, MD

     Defendant.

## COMPLAINT

        Plaintiff Donald Becker, by and through counsel,

Kathleen Cahill, Law Offices of Kathleen Cahill LLC, and

Benjamin Rosenberg, Rosenberg, Martin, Greenberg, LLP, sues

Baltimore County, Maryland, and in support thereof, states as

follows:

### Parties, Jurisdiction & Venue

   1. This action is brought to enforce the statutory and

regulatory provisions of Title I and Title V of the Americans

with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C.

§ 12111, et seq., which incorporates, through 42 U.S.C.

§§ 12117, the powers, remedies, and procedures set forth in

Title VII of the Civil Rights Act of 1964, as amended, including in 42 U.S.C. § 2000e-5.

2. This Court has jurisdiction of the action under 42 U.S.C. §§ 2000e-5(f), and 28 U.S.C. §§ 1331.

3. This Court has authority to grant equitable relief and monetary damages pursuant to 42 U.S.C. § 12117.

4. Venue is proper in this district under 28 U.S.C. § 1391.

5. Plaintiff Donald K. Becker, Sr. is an individual residing in Carroll County, Maryland. At all pertinent times, plaintiff Becker was employed as a firefighter with the Baltimore County Fire Department.

6. Defendant is Baltimore County, a political subdivision of the State of Maryland.

7. All applicable administrative and procedural prerequisites have been satisfied. Plaintiff filed a timely charge with the Equal Employment Opportunity Commission; on July 30, 2010, the EEOC issued a Letter of Determination finding reasonable cause to believe the County violated the ADA; the U.S. Department of Justice investigated and also found the County had violated the ADA; and on August 14, 2012, the U.S. Department of Justice issued the Notice of Right to Sue. This Complaint is filed within 90 days of the receipt of the Notice of Right to Sue.

## Facts Common to All Counts

8.    Donald K. Becker, Sr. was a Baltimore County firefighter from April 4, 1981 to June 9, 2009, when he was ultimately discharged by forced retirement.

9. Prior to his discharge, plaintiff Becker was ordered to submit to compelled, highly intrusive, overbroad and illegal medical inquiries, or face discharge. The medical inquiries were ordered of the Chief of the Fire Department without any legal basis, and in violation of plaintiff Becker's rights.

10. On the basis of medical information derived from the illegal medical inquiries, plaintiff Becker was forced to retire from the Fire Department years before his planned retirement date and falsely labeled "not fit for duty," despite the fact that he was in all respects able to perform his essential job functions.

11.    On August 28, 2008, plaintiff Becker underwent shoulder replacement surgery. Prior to that time, he was fully able to and did perform his job duties without limitation. He elected to undergo the surgical procedure to alleviate pain from a shoulder injury that occurred decades earlier.

12.    Following a successful procedure and a "remarkable" recovery, on December 23, 2008, plaintiff was released by his orthopedic surgeon to return to work. His orthopedic

3

specialist reviewed the firefighter job description and declared plaintiff fit for full-duty with no restrictions, and noted that he had "excellent clinical function" in his repaired left shoulder.

13.   However, prior to being released to return to work or seeking to do so, plaintiff was ordered by the Fire Chief to submit to a Fitness for Duty evaluation. That occurred in the midst of his recovery and while he still had available leave time to complete his recovery. The Fire Chief also ordered plaintiff to bring to the examination unlimited medical records ("all medical documentation"), with no reference to his shoulder, and to sign an unlimited Authorization for Release of Medical Information.

14.   Although plaintiff Becker had concerns about the propriety of the order that he submit to the medical examination while he was still in the midst of his recovery, he submitted to the examination because he knew he faced serious disciplinary action were he to defy an order of the Fire Chief.

15.   On December 12, 2008, plaintiff Becker presented for the compelled medical evaluation by orthopedist Robert Riederman, M.D. Dr. Riederman agreed with plaintiff's treating orthopedist, stating in his report: "He has done remarkably well since undergoing this procedure and on physical examination essentially demonstrates full range of

4

motion and satisfactory strength." The County's doctor went on to provide a "personal" comment: "I do not recommend that he return to work at his previous job as a fire specialist. . . . While Mr. Becker would very much like to return to work as a firefighter, I personally do not recommend this," noting possible loosening of the prosthesis in the future and the potential need for another joint replacement down the road, in light of his relatively young age at the time of the procedure. Dr. Riederman did not find that plaintiff could not perform his essential job functions.

16.   Despite the medical opinion of its own doctor to the effect that plaintiff was not unfit for duty, on December 30, 2008, the Fire Department notified plaintiff that it was ending his career by forced retirement. He was provided an "options letter" dictating that he had until January 16, 2009 to choose an "option" as to how his career would end, or be terminated. Plaintiff responded that he could not pick an option because it was not true that he was not fit for duty.

17.   Thereafter, on February 26, 2009, Mr. Becker was required to sign yet another unlimited Medical Records Authorization form. This time, the edict included a threat to take both his retirement benefits and his employment were he to fail to sign.

18.   When plaintiff Becker challenged the forced retirement, the Fire Department sent him for another medical examination, this time by a generalist, not an orthopedist.

19.   On April 3, 2009, plaintiff Becker presented for the compelled medical evaluation by Peter Oroszlan, M.D., an occupational medicine doctor the County extensively utilized for such purposes. Dr. Oroszlan reviewed medical records he had been provided by the Fire Department dating back to 2001, seven years prior to the shoulder surgery. Dr. Oroszlan probed into plaintiff's history of depression surrounding the death of his mother and extensively examined his psoriasis, among other matters in no way related to his shoulder. He performed an EKG and pulmonary function testing, also wholly unrelated to the orthopedic issue. He claimed plaintiff had high blood pressure and "mild obstructive lung disease," and guessed that he may have an undiagnosed cardiac problem. But on the subject of the shoulder, Dr. Oroszlan acknowledged that the surgery was "quite successful," leaving plaintiff pain-free and with full range of motion. Further, he conceded: "Dr. Riederman addressed the medical issues concerning the left total shoulder replacement and I do not have the expertise to add anything else to the discussion." He stated the same to plaintiff Becker during the examination, that because he was not an orthopedist he could not comment on the ultimate orthopedic issues. Nonetheless,

without basis or explanation, Dr. Oroszlan wrote in his
report that plaintiff could not perform his essential job
functions.

20. Within days of Dr. Oroszlan's exam, on April 7,
2009, plaintiff Becker elected to undergo a demanding
Functional Capacity Examination conducted by a highly
regarded provider that regularly administers such testing in
the emergency responder field. He was tested for the
firefighter position under the "Heavy Physical Demands"
measures and passed. The report of these findings was
submitted to the Fire Department, but the Fire Department
ignored the authoritative testing and proceeded with the
forced retirement based upon the report of Dr. Oroszlan.

21. On June 9, 2009, despite the fact that not one
qualified orthopedic specialist found plaintiff unfit for
duty and that plaintiff passed the Functional Capacity Exam,
the Fire Department ended plaintiff's career by forced
"disability retirement," further stigmatizing him.

22. There was no legitimate reason to compel plaintiff
Becker to submit to serial medical inquiries after he was
released by his own specialist. Those serial medical
inquiries were neither job-related nor consistent with
business necessity. There was no legitimate reason to force
plaintiff off the job, given that he had proven that

7

following his surgery he could still fully perform his essential job functions.

23. Based upon the "findings" derived from those illegal medical inquiries, and the County's pattern and practice of violating the ADA, plaintiff was ultimately discharged effective June 9, 2009, despite the fact that he was able to perform his essential job functions.

24. As a result of the acts described herein, plaintiff has suffered loss of pay and benefits, including retirement benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

25. During the period at issue, the County engaged in an unlawful pattern and practice of violating Title I of the Americans with Disabilities Act. In August 2012, a Consent Decree was entered in this Court confirming that the County had engaged in a pattern and practice of violations of the ADA, including but not limited to: (a) compelling employees to submit to medical examinations and disability-related inquiries that were not job-related and consistent with business necessity, including (but not limited to) improperly compelling employees to disclose past medical history and medical records, (b) compelling employees to sign releases seeking medical information unrelated to the employees' present ability to perform their job duties and resulting in

8

the disclosure of sensitive health-related information, and
(c) compelling employees to submit to medical examinations
and disability-related inquiries that were overbroad and
wholly unrelated to the medical conditions for which the
County was purportedly evaluating the employees' fitness for
duty. *U.S. v. Baltimore County*, WDQ-12-CV2327 (8/8/12).

26. Among the terms of the Consent Decree, the County is
prohibited from using Dr. Oroszlan's services, effective
September 22, 2012, due to his involvement in the County's
pattern and practice of violating the ADA.

## COUNT ONE

(ADA - Medical Examinations and Inquiries)

27. Plaintiff Becker incorporates by reference the
allegations above.

28. In subjecting plaintiff to the treatment described
herein, defendant Baltimore County violated Title I of ADA,
42 U.S.C. § 12111, et seq., and its implementing regulation,
29 C.F.R. Part 1630, by requiring plaintiff to submit to
unnecessary medical examinations and disability-related
inquiries, that were not job-related and consistent with
business necessity and were unrelated to his ability to
perform his job-related functions, specifically, the orders
to submit to examinations following a surgical procedure that
did not affect his present ability to perform his job-related
duties.

29. As a result of the acts described herein, plaintiff has suffered loss of pay and benefits, including retirement benefits, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

WHEREFORE, plaintiff Becker seeks against defendant Baltimore County economic relief and damages in the amount of $2,000,000.00, plus interest, nonpecuniary compensatory damages in the amount of $300,000.00, plus his attorney's fees, expenses and costs, and such additional relief as the Court deems just.

## COUNT TWO

(ADA - Discharge)

30. Plaintiff Becker incorporates by reference the allegations above.

31. Plaintiff Becker is a qualified individual with a disability.

32. In subjecting plaintiff to the treatment described herein, defendant Baltimore County violated the ADA by discharging plaintiff despite the fact that he was fully able to perform his essential job functions.

33. As a result of the acts described herein, plaintiff has suffered loss of pay and benefits, including retirement benefits, future pecuniary losses, emotional pain, suffering,

inconvenience, mental anguish, loss of enjoyment of life, and other pecuniary and non-pecuniary losses.

WHEREFORE, plaintiff Becker seeks against defendant Baltimore County economic relief and damages in the amount of $2,000,000.00, plus interest, nonpecuniary compensatory damages in the amount of $300,000.00, plus his attorney's fees, expenses and costs, and such additional relief as the Court deems just.

Kathleen Cahill
The Law Offices of
    Kathleen Cahill LLC
15 East Chesapeake Avenue
Towson, MD  21286
410-321-6171
Kathleen@KathleenCahill-Law.com
Bar No. 02006

Benjamin Rosenberg
Rosenberg Martin Greenberg LLP
25 S. Charles St.
Suite 2115
Baltimore, Md. 21201
410-727-6600
brosenberg@rosenbergmartin.com
Bar No. 00263

Attorneys for Plaintiff

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

DONALD K. BECKER, SR.,                    *

         Plaintiff,

v.                                        *       Civil Action No:

BALTIMORE COUNTY MARYLAND,                *

         Defendant.                    *

   *    *    *    *    *    *    *    *    *    *    *    *

**REQUEST FOR JURY TRIAL**

        Plaintiff Donald K. Becker Sr. requests a trial by jury as to all counts.

Kathleen Cahill
The Law Offices of
    Kathleen Cahill LLC
15 East Chesapeake Avenue
Towson, MD  21286
410-321-6171
Kathleen@KathleenCahill-Law.com
Bar No. 02006

Benjamin Rosenberg
Rosenberg Martin Greenberg LLP
25 S. Charles St.
Suite 2115
Baltimore, Md. 21201
410-727-6600
brosenberg@rosenbergmartin.com
Bar No. 00263

Attorneys for Plaintiff

September 5, 2012